# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| LLOYD GRASS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:07CV1726 DJS/MLM |
| | ) | |
| ROBERT REITZ, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Before the court is the Petition Under 28 U.S.C. § 2254 by a Person in State Custody filed by Petitioner Lloyd Grass ("Petitioner"). Doc. 1. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted and a Supplemental Response. Doc. 7, Doc. 14. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 5.

## I.
## BACKGROUND

The history and facts of Petitioner's case were stated by the Missouri appellate court as follows:[1]

---

[1]    In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003)). See also Simmons v. Luebbers, 299 F.3d 929, 942 (8th Cir. 2002). Explicit and implicit findings by state trial and appellate courts are presumed to be correct. Rushen v. Spain,464 U.S. 114, 120, (1983); Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Sumner v. Mata, 449 U.S. 539, 545-47, 550 (1981). Additionally, the Eighth Circuit holds that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 867 (8th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991)). See also Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988). The

On October 14, 1992, petitioner, Lloyd E. Grass, stabbed his wife to death. He was immediately evaluated as "markedly psychotic" at Malcolm Bliss Mental Health Center and admitted to the Biggs Forensic Center of Fulton State Hospital that same day. On October 20, 1992 he was returned to jail with a discharge diagnosis of Brief Reactive Psychosis, Resolved (Provisional); Cannabis Dependence, In Remission While Hospitalized; and Delirium, Resolved (Provisional). The state charged him with murder in the first degree in Warren County. On November 9, 1993, petitioner was readmitted to the Biggs Forensic Center of Fulton State Hospital for a court-ordered pretrial mental evaluation.

Richard Gowdy, Ph.D., who was then a certified forensic examiner for the Biggs Forensic Center, saw petitioner for a pretrial mental evaluation on November 9, 1993 and again on July 19, 1994. Dr. Gowdy diagnosed him with Psychotic Disorder, Not Otherwise Specified, In Partial Remission. Dr. Gowdy provided the court with his opinion that as a result of a mental disease, petitioner did not fully know and appreciate the nature, quality and wrongfulness of his conduct and was unable to conform his conduct to the requirements of the law at the time of his wife's death. In September 1994, the Warren County circuit court accepted petitioner's plea of not guilty by reason of mental disease or defect and committed him to the custody of the Missouri Department of Mental Health, which placed him in the Biggs Forensic Center of the Fulton State Hospital.

Subsequently, on March 16, 1995, the Department of Mental Health transferred him to the less restrictive St. Louis State Hospital. In October 1995, petitioner filed a petition with the probate division of the Circuit Court of the City of St. Louis to obtain a conditional release. That court granted the conditional release, but this court reversed. Grass v. Nixon, 926 S.W.2d 67, 68 (Mo. App.1996).

On August 8, 1996, petitioner was granted full unescorted privileges. The next day, petitioner escaped from the St. Louis State Hospital. After being arrested in New

___

presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. See Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989) (citing Marshall v. Lonberger, 459 U.S. at 431-32; Cuyler v. Sullivan, 446 U.S. 335, 341-42 (1980)). "Questions of witness credibility are usually considered to be issues of fact." Id.(citing Brown v. Allen, 344 U.S. 443, 506 (1953)). Mixed questions of law and fact, however, are not entitled to a presumption of correctness pursuant to § 2254(d). Cornell v. Nix, 976 F.2d 376, 382 (8th Cir. 1992).

Further, a state court's factual determinations regarding a defendant's competency is entitled to a presumption of correctness. Demosthenes v. Baal, 495 U.S. 731, 735 (1990) (per curiam); Lyon v. Luebbers, 403 F.3d 585, 593 (8th Cir. 2005). Further, "a finding of competence, once made, continues to be presumptively correct until some good reason to doubt it is presented." Garrett v. Groose, 99 F.3d 283, 286 (8th Cir. 1996).

York, petitioner was extradited to Missouri. Petitioner was thereafter convicted of escape from commitment and sentenced to a term of five years in the custody of the Missouri Department of Corrections. After serving twenty-eight months in prison, petitioner was paroled back to the custody of the Department of Mental Health in March 2001.

In February 2003, petitioner filed an application for unconditional release, which the trial court denied. After this court affirmed that judgment, the Missouri Supreme Court granted petitioner's application for transfer and reversed and remanded for the trial court to determine the independence of the expert appointed to examine the petitioner and make a recommendation about his suitability for release. Grass v. State, 134 S.W.3d 34, 35 (Mo. banc 2004)

In August 2004, petitioner filed new pro se motions for conditional and unconditional release, and counsel filed amended applications for release. The trial court consolidated the applications and tried the cases in February 2005. On February 1, 2006, the trial court entered findings of fact, conclusions of law, and a judgment. In response to the state's post-opinion motion, the trial court later entered an amended judgment. The court denied petitioner's application for unconditional release but granted petitioner's application for conditional release. Petitioner and the state appeal[ed].

State v. Grass, 220 S.W.3d 335, 337-39 (Mo. Ct. App. 2007) (per curiam).

On February 27, 2007, the Missouri appellate court issued its decision *affirming the denial of Petitioner's application for unconditional release* and remanding in regard to Petitioner's application for conditional release. Grass, 220 S.W.3d 335. Petitioner's applications for transfer to the Missouri Supreme Court were denied. Id.

On October 10, 2007, Petitioner filed his § 2254 Petition in which he raises the following issue:

**Petitioner's right to due process was violated because he was denied unconditional release. [2]**

Doc. 1.

----

[2]     This court's review of Petitioner's § 2254 Petition establishes that he intends only to challenge the constitutionality of the denial of his unconditional release; he does not challenge the Missouri appellate court's decision in regard to conditional release.

## II.
## EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S. 386, 388-89 (2004). See also Coleman, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice; Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1994). The United States Supreme Court has recently held that because the "cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice" the Court has "recognized a narrow exception to the cause requirement where a constitutional

violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." Dretke, 541 U.S. at 393 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986); Schlup v. Delo, 513 U.S. 298 (1995)). "[A] habeas petitioner who wishes to have a procedurally defaulted claim evaluated on its merits 'must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" McCoy v. Lockhart, 969 F.2d 649, 651 (8th Cir. 1992 ) (citation omitted).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim." Id. (citation omitted).

In regard to the exhaustion requirement the Eighth Circuit holds:

> "[I]t is well settled that only after some clear manifestation on the record that a state court will refuse to entertain petitioner's claims will the exhaustion requirement be disregarded as futile." Powell v. Wyrick, 657 F.2d 222, 224 (8th Cir.1981); accord Eaton v. Wyrick, 528 F.2d 477, 482 (8th Cir.1975). The question is usually whether state law provides any presently available state procedure for determining the merits of the petitioner's claim; not whether the state court would decide in favor of the petitioner on the merits. See, e.g., Lindner v. Wyrick, 644 F.2d 724, 727 (8th Cir.), cert. denied, 454 U.S. 872, 102 S.Ct. 345, 70 L.Ed.2d 178 (1981) (return to state court not futile because Missouri rule allows second post-conviction petition if the petitioner can show his claims are based on information not available at the time of the first petition); Thomas v. Wyrick, 622 F.2d 411, 414 (8th Cir.1980) (whether state rule barring claims not raised in direct appeal makes post-conviction remedy presently unavailable is a question of state law).

Snethen v. Nix, 736 F.2d 1241, 1245 (8th Cir. 1984).

In Duncan v. Walker, 533 U.S. 167, 178-79 (2001), the United States Supreme Court held that "[t]he exhaustion requirement of § 2254(b) ensures that the state courts have the opportunity to

consider fully federal-law challenges to state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment." (citing <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>Rose v. Lundy</u>, 455 U.S. 509, 518-19 (1982)). The Court further stated that "[t]his requirement 'is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.'" <u>Duncan</u>, 533 U.S. at 179 (citing <u>Rose</u>, 455 U.S. at 518). "The exhaustion rule promotes comity in that 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.' " <u>Id.</u> (quoting <u>Rose</u>, 455 U.S. at 518) (quoting <u>Darr v. Burford</u>, 339 U.S. 200, 204 (1950)). As stated by the Court in <u>O'Sullivan</u>, 526 U.S. at 844, "[c]omity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." (citing <u>Rose</u>, 455 U.S. at 515-516; <u>Darr</u>, 339 U.S. at 204). The Court in <u>Duncan</u> further acknowledged that the exhaustion requirement is designed to reduce the risk of piecemeal litigation. 533 U.S. at 180. Thus, "'strict enforcement of the exhaustion requirement will encourage habeas petitioners to exhaust all of their claims in state court and to present the federal court with a single habeas petition.'" <u>Id.</u> (quoting <u>Rose</u>, 455 U.S. at 520).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. The Court, in <u>Duncan</u>, recognized the need to reconcile the tolling provision of §2244(d)(2) with the exhaustion requirement of § 2254(b). The Court held that:

> Section 2244(d)(2) promotes the exhaustion of state remedies by protecting a state prisoner's ability later to apply for federal habeas relief while state remedies are being pursued. At the same time, the provision limits the harm to the interest in finality by according tolling effect only to "properly filed application[s] for State post-conviction or other collateral review."

<u>Duncan</u>, 533 U.S. at 179-80.

In his sole ground for habeas relief Petitioner argues that his right to due process was violated by his not being granted *unconditional* release. In support of this claim Petitioner contends that he no longer has a mental disease or defect and is no longer dangerous. Respondent contends that this claim is unexhausted and that, therefore, Petitioner's § 2254 Petition should be dismissed. In support of this argument Respondent states that Petitioner seeks unconditional release; that Petitioner presented this issue to the Missouri appellate court; that the appellate court reversed and remanded Petitioner's cause for further proceedings; that docket entries from the Warren County Circuit Court demonstrate Petitioner's ability to initiate and continue litigation concerning his release from custody; and that Petitioner has not sought the remedy as provided by the appellate court. The court notes, however, that Petitioner challenges his *unconditional* release in his § 2254 Petition and that the State appellate court finally determined that issue. It reversed and remanded only in regard to the issue of whether Petitioner should be conditionally released. As such, the court finds that Petitioner has exhausted the issue of whether he should have been granted unconditional release.[3] The court further finds that Petitioner's §2254 Petition is timely filed.

### III.
### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of

---

[3]  While Petitioner does not challenge the denial of conditional release in his § 2254 Petition, the court notes that the State Circuit Court has not followed the mandate of the State appellate court regarding Petitioner's conditional release. Under such circumstances, Petitioner has not exhausted any challenge to the denial of his conditional release. See Duncan, 533 U.S. at 178-79.

Respondent argues that, pursuant to Mo. Rev. Stat. § 553.040, Petitioner can renew his request for unconditional release one year after the denial of his last application and that he has not done so. While this is an accurate statement of the applicable statute, the § 2254 Petition before this court challenges the decision of the Missouri appellate court in regard to the denial of Petitioner's previously filed application for unconditional release.

April 24, 1996. <u>Lindh v. Murphy</u>, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" <u>Evenstad v. Carlson</u>, 470 F.3d 777, 782-83 (8th Cir. 2006) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent he thinks the state courts acted contrary to or applied unreasonably. <u>Id.</u> at 283 (citing <u>Buchheit v. Norris</u>, 459 F.3d 849, 853 (8th Cir. 2006); <u>Owsley v. Bowersox</u>, 234 F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. §2254(d)(1)." <u>Id.</u> at 784. "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1). <u>Id.</u> at 783 (citing <u>Tunstall v. Hopkins</u>, 306 F.3d 601, 611 (8th Cir. 2002)). <u>See</u> <u>also</u> <u>Carter v. Kemna</u>, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." <u>Id.</u> at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as
> determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of . . . clearly established
> Federal Law, as determined by the Supreme Court of the United
> States." Under the "contrary to" clause, a federal habeas court may
> grant the writ if the state court arrives at a conclusion opposite to that
> reached by this Court on a question of law or if the state court decides
> a case differently than this Court has on a set of materially
> indistinguishable facts. Under the "unreasonable application" clause, a
> federal habeas court may grant the writ if the state court identifies the
> correct governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's

decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." Williams, 529

U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal

standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the

state court decision applied clearly established federal law incorrectly, relief is appropriate only if that

application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The

Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar

cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's

resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not

be granted unless the adjudication of the claim "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court

proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of

a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500

(8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing

evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief,

the state court decision involves an unreasonable determination of the facts in light of the evidence

presented in state court proceedings "only if it is shown by clear and convincing evidence that the

state court's presumptively correct factual findings do not enjoy support in the record**."** Lomholt v.

Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir.

2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the

evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that

the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C.

§ 2254(e)(1)."), cert. denied, 543 U.S. 1027 (2004).

The United States Supreme Court has defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. <u>Wright v. West</u>, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

<u>Yarborough v. Alvarado</u>, 541 U.S. 652, 644 (2004)**.**

## IV.
## DISCUSSION ON THE MERITS

Petitioner contends that his right to due process was violated by his being denied unconditional release. In support of this position Petitioner argues that the State circuit court found that he did not have a mental disease or defect and that he is not dangerous.

Upon addressing the issue raised by Petitioner, that his constitutional rights were violated by his being denied unconditional release, the Missouri court held as follows:

> In his sole point on appeal, petitioner contends that the trial court erroneously applied Section 552.040 RSMo (2000) when it denied his petition for unconditional release. Petitioner argues that the law requires his unconditional release because the trial court made findings in its judgment on his application for conditional release that petitioner proved by clear and convincing evidence that: 1) he does not currently suffer from a mental disease or defect; 2) he is not a danger to himself or others and is not likely in the foreseeable future to commit another violent crime because of mental illness; and 3) he is aware of the nature and wrongfulness of the crime underlying his commitment and currently has the capacity to conform his conduct to the requirements of the law.
>
> ...
>
> Section 552.040.7 governs the procedure for a hearing on an application for unconditional release. Subsection (6) of this statute provides in part:

The burden of persuasion for any person committed to a mental health facility under the provisions of this section upon acquittal on the grounds of mental disease or defect excluding responsibility shall be on the party seeking unconditional release to prove by clear and convincing evidence that the person for whom unconditional release is sought does not have, and in the reasonable future is not likely to have, a mental disease or defect rendering the person dangerous to the safety of himself or others.

Section 552.040.7(6).

Clear and convincing evidence is evidence that instantly tilts the scales in the affirmative when weighed against the opposing evidence and that leaves the fact finder with the abiding conviction that the evidence is true. Marsh v. State, 942 S.W.2d 385, 390 (Mo. App. 1997).

Section 552.040.9 further requires that "[n]o committed person shall be unconditionally released unless it is determined through the procedures in this section that the person does not have, and in the reasonable future is not likely to have, a mental disease or defect rendering the person dangerous to the safety of himself or others." See State v. Gratts, 112 S.W.3d 12, 18 (Mo. App.2003); see also State v. Weekly, 107 S.W.3d 340, 346 (Mo. App. 2003).

In its findings, conclusions, and judgment on the application for conditional release, the trial court found that petitioner "does not suffer from any mental disease or defect as set forth in Chapter 552 RSMo," "is not likely to be dangerous to others while on conditional release," "is not now and is not likely in the reasonable future to commit another violent crime against another person because of his mental illness," and "is aware of the nature of his violent crime committed against another person and presently possesses the capacity to appreciate the criminality of his violent crime against another person and his capacity to conform to the requirement of the law in the future." However, it did not make the finding required by sections 552.040.7(6) and 552.040.9 for unconditional release that petitioner was not likely in the reasonable future to have a mental disease or defect rendering him dangerous to the safety of himself or others. This is a different factual finding from those required for conditional release, and it is not encompassed by the findings made on conditional release. The "reasonable future" is a broader time frame than "while on conditional release," and "dangerous to the safety of himself or others" is a broader condition than "likely ... to commit another violent crime" against another. Thus, the trial court's findings on conditional release do not mandate petitioner's unconditional release.

In the argument under this point, petitioner also argues that insufficient evidence supports the trial court's decision to deny unconditional release. We disagree.[4]

Because the court relied heavily on the three expert witnesses to support its denial of unconditional release, we start our analysis with these experts' reports and testimony. The court retained Jeffrey Kline, Ph.D., a psychologist for the Department of Mental Health, to do a mental evaluation of petitioner. Dr. Kline reviewed petitioner's legal and medical records and examination reports, read research studies on violence risk assessment, and had two interviews with petitioner for a total of 225 minutes. In considering conditional release, Dr. Kline found that "an important component to ensuring the safety of others," if petitioner would be released, "is dependent upon his ability to either self monitor his psychiatric symptoms or comply with monitoring ordered by the court." In recommending against unconditional release, he found petitioner had not demonstrated an adequate ability to self-monitor. His written conclusion was:

2. Suitability for Unconditional Release

While Mr. Grass' risk for relapse of his symptoms is minimal he has not demonstrated an adequate ability to monitor his own behavior in order to assure that if he does have a relapse in symptoms of psychosis in the future that he will be able to manage those symptoms appropriately. In part, his lack of ability is based in part on the fact that he has not been observed to suffer any symptoms of psychosis so in essence has not had an opportunity to demonstrate an adequate ability. It should be noted though that while his risk of symptom relapse is minimal, it is still present and therefore transfer from an intermediate security hospital with constant supervision to an unsupervised setting of an unconditional release is not warranted. The etiology of Mr. Grass' psychosis is ultimately unknown and therefore long term predication somewhat more difficult.

With the above issues in mind, within a reasonable degree of psychological certainty, this examiner cannot find that Mr. Grass is unlikely to have a mental disease or defect rendering him a [sic] dangerous to the safety of himself or others within the reasonable

---

[4]       In this regard the appellate court noted:

Ordinarily we would not review this argument because it was not contained in the point relied on. Mullenix-St. Charles Props. v. St. Charles, 983 S.W.2d 550, 559 (Mo. App.1998). However, because of the importance of this case and because the state responded to this argument in its brief, we exercise our discretion to review it.

future. Therefore, within a reasonable degree of psychological certainty, this examiner finds Mr. Grass is not suitable for an unconditional release.

At trial, Dr. Kline testified that he recommended against an unconditional release because he concluded that petitioner's behavior in the hospital showed an inadequate ability to monitor his own behavior. The court examined Dr. Kline and asked if it was his opinion that petitioner was "not likely to be violent or dangerous in the future." Dr. Kline answered, consistent with his report, that he did not see "any risk factors beyond the index crime that would increase his risk for violent acts while on conditional release " (emphasis added). He did not assent to that part of the court's question asking if petitioner was not likely to be dangerous or violent "in the future."

The state retained Dr. Gowdy, who had previously evaluated petitioner in 1993, 1994, and 2001, to complete a mental evaluation of petitioner. At the time of trial, Dr. Gowdy was the Director of Forensic Services for the Department of Mental Health and a certified forensic examiner at the Fulton State Hospital. Dr. Gowdy reported on petitioner's likelihood of violent crime because of mental illness as follows:

Mr. Grass is not participating in treatment hindering a full analysis of his current mental condition and likelihood of future dangerousness. He lacks insight into the nature of his illness and therefore does not have a viable relapse prevention plan. His lack of cooperation with inpatient treatment suggests that he would not submit to the community monitoring necessary to ensure that he does not become dangerous due to the reemergence of psychotic symptoms. He continues to fast, an extremely risky and dangerous behavior since he was fasting prior to the index offense.

At trial, Dr. Gowdy testified that he recommended against unconditional release. He testified that he could not say within a reasonable degree of medical certainty "whether he is not now, and not unlikely in the reasonable future, to commit another violent crime against another person because of his mental illness."

Petitioner retained Daniel J. Cuneo, Ph.D., a clinical psychologist, for a mental evaluation. Dr. Cuneo's written opinion concluded:

Therefore, it would be my opinion that Mr. Lloyd Grass does not have a mental illness at the present time and it is not likely in the reasonably [sic] future for him to have a mental disease or defect that would render him dangerous to the safety of himself or others.

I could not recommend an unconditional release for Mr. Grass at this time. He has been in a jail, prison, or a secure hospital setting continuously since January 1997.

I would recommend that he receive a conditional release and this will serve as a means to reintegrate him back into society. I would recommend that he be placed in a community halfway house and be followed by a forensic case manager. I would also recommend that he receive periodic drug testing as his past use of substances may have played a role in his psychosis.

At trial, Dr. Cuneo testified that it was not likely in the reasonable future that petitioner would have a mental disease that would render him dangerous to others. He also testified:

First of all, Mr. Grass, at the current time if he is not mentally ill, he is not reasonably expected to inflict serious physical harm upon himself or others in the near future, he is drug free at the current time, steps can be made to continue to monitor whether he is drug free and keep dropping him to make sure as part of the forensic monitor.

However, he did not recommend an unconditional release because the residual effects of petitioner's lengthy incarceration would require an initial period of continuing oversight. He further testified that when petitioner was acutely psychotic, he had been abusing marijuana. He reported that, although no cause had been definitively established, mental health professionals had opined that petitioner's drug abuse was one of the factors that triggered his psychotic behavior. He recommended conditional release with drug testing every thirty days.

In its findings on petitioner's application for unconditional release, the trial court reported that it relied heavily on the three expert witnesses and that each opined that petitioner should not be considered for unconditional release. The court further found and concluded that petitioner "[did] not meet the statutory factors and considerations of relevant credible evidence meeting the burden of proof of 'clear and convincing,' and it is, therefore, the judgment of the court that Petitioner's Petition for Unconditional Release is hereby denied."

Substantial evidence in the record supports the trial court's decision to deny unconditional release and to not find that clear and convincing evidence supported the criteria in sections 532.040.7(6) and 552.040.9 for unconditional release. Dr. Kline opined that he could not say within a reasonable degree of medical certainty that petitioner was not likely to have a mental illness in the near future rendering petitioner dangerous to the safety of others. He explained that court-ordered monitoring of petitioner's psychiatric symptoms was necessary to assure the safety of others because petitioner had not demonstrated the ability to monitor his own behavior. Dr. Gowdy testified that petitioner could not meet the higher standard in that he could not say that petitioner was unlikely to commit a violent crime in the reasonable future. He did not believe that petitioner had the insight to monitor himself, nor did he think that community monitoring would be effective due to petitioner's lack of cooperation with

inpatient treatment. Although Dr. Cuneo testified that in the reasonable future petitioner was unlikely to have a mental disease or defect that would render him dangerous to himself or others, he qualified his opinion by recommending a conditional release with periodic drug testing because drug use may have triggered petitioner's psychosis.

As explained in Weekly, unconditional release involves a total loss of the Department of Mental Health's jurisdiction and is not appropriate if illegal drug monitoring is required to prevent a relapse into a drug-induced psychosis. Weekly, 107 S.W.3d at 349-50. "The propensity of a committed person to become a danger to the community while on unconditional release must be heavily weighed against the committed person's interest in personal liberty." Id. at 350. "It is appropriate, under section 552.040, to deny unconditional release to a patient that has shown the inability to provide for his or her own mental health without supervision when there is likelihood that the patient will become psychotic and dangerous." Id. Here, all of the experts agreed that monitoring of drug use or psychiatric symptoms was required to prevent a relapse.

The trial court did not erroneously apply section 552.040 in denying unconditional release, and its decision is supported by substantial evidence. The judgment denying unconditional release is affirmed.

Grass, 220 S.W.3d at 339-43.

Respondent contends that the issue raised by Petitioner in his § 2254 Petition is not cognizable pursuant to federal habeas relief. Indeed, the State appellate court applied its finding to the applicable State law and concluded that according to State law Petitioner was not entitled to unconditional release. Issues concerning the interpretation and application of state law are not cognizable in federal habeas review. See Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994) (holding that it is not the province of a federal habeas court to reexamine state court determinations on state law questions; petitioner's claim was based only on Missouri law and actions of Missouri officials and thus may be addressed only by the Missouri courts); Higgins v. Smith, 991 F.2d 440, 442 (8th Cir. 1993) (holding that error in the interpretation and application of state law does not rise to the level of a constitutional violation cognizable in a federal habeas petition); Jones v. Armontrout, 953 F.2d 404, 405 (8th Cir. 1992) (holding that an incorrect application of a Missouri statute, without more, does not establish

that a prisoner is being held in violation of the laws or constitution of the United States, which is a prerequisite for relief under § 2254). Further, the United States Supreme Court held in <u>Garner v. Louisiana</u>, 368 U.S. 157, 166 (1961), that a federal court is "bound by a State's interpretation of its own statute and will not substitute [the federal court's] judgment for that of the State's when it becomes necessary to analyze the evidence for the purpose of determining whether that evidence supports the findings of a state court." In the instant case for this court to consider the issue raised by Petitioner the court must interpret and apply Mo. Rev. Stat. § 552.040. To this extent it can be said Petitioner's claim is not cognizable under §2254. Implicit in Petitioner's contention that he was improperly denied unconditional release, however, is a challenge to his continued confinement. Such a challenge raises a constitutional issue. <u>See</u> <u>Jones v. United States,</u> 463 U.S. 354 (1983) ("It is clear that 'commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'") (quoting <u>Addington v. Texas</u>, 441 U.S. 418, 425(1979)); <u>Revels v. Sanders,</u> 519 F.3d 734, 740 (8th Cir. 2008), <u>rehearing denied</u>, 2008 WL 2628653 (8th Cir. June 5, 2008).[5]

To the extent that Petitioner challenges the State court's factual conclusions regarding his unconditional release, as stated above, a state court's factual findings carry a presumption of correctness that are rebutted only by clear and convincing evidence. <u>See</u> note 1 (citing <u>Demosthenes</u>, 495 U.S. at 735; <u>Lyon</u>, 403 F.3d at 593; <u>Hall</u>, 341 F.3d at 712; <u>Groose</u>, 99 F.3d at 286). Significantly, upon concluding that Petitioner was not entitled to unconditional release the State appellate court relied on the agreement of all of the experts, including Petitioner's own expert, that Petitioner required monitoring.

---

[5] See discussion below in regard to the constitutional implications of continued confinement.

Pursuant to <u>Williams,</u> 529 U.S. 362, the court will consider federal law applicable to Petitioner's claim that he was denied unconditional release in violation of his constitutional rights. In <u>Jones v. United States</u>, 463 U.S. 354, 368 (1983), the Supreme Court held that "[t]he purpose of commitment following an insanity acquittal ... is to treat the individual's mental illness and protect him and society from his potential dangerousness. In regard to the duration of an insanity acquittee's commitment, the Court held in <u>Jones</u>, 463 U.S. at 368, that "[t]he Due Process Clause 'requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed.'" (quoting <u>Jackson v. Indiana</u>, 406 U.S. 715, 738, (1972)).[6] The Supreme Court further held in <u>Jones</u>, 463 U.S. at 366, that "[i]t comports with common sense to conclude that someone whose mental illness was sufficient to lead him to commit a criminal act is likely to remain ill and in need of treatment."

The Supreme Court also addressed confinement of an insanity acquittee in <u>Foucha v. Louisiana</u>, 504 U.S. 71, 79 (1992), where it held that where the acquittee is no longer suffering from a mental disease or illness, "he is entitled to constitutionally adequate procedures to establish the grounds for his confinement." The Court held that confining indefinitely an insanity acquittee who is no longer mentally ill but who has "an antisocial personality that sometimes leads to aggressive conduct" would "be only a step away from substituting confinements for dangerousness for our present system which, with only narrow exceptions and aside from permissible confinements for mental illness, incarcerates only those who are proved beyond reasonable doubt to have violated a criminal law." <u>Id.</u> at 82-83.

---

[6] In <u>Jones</u>, 463 U.S. at 368, the Supreme Court rejected the notion that an insanity "acquittee's hypothetical maximum sentence provides the constitutional limit for his commitment."

The Eighth Circuit addressed the constitutionality of the denial of unconditional release pursuant to Missouri law in Revels, 519 F.3d at 740-43, in which it held:

> "[C]ommitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Jones v. United States, 463 U.S. 354, 361, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983) ( quoting Addington v. Texas, 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)). The Supreme Court outlined the substantive protections of the Due Process Clause for the continued confinement of insanity acquittees in Foucha v. Louisiana, 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). The petitioner in Foucha challenged Louisiana's statutory release provision which provided that the state could continue to confine indefinitely an acquittee in a mental facility who, although not mentally ill, might be dangerous to himself or to others if released. Id. at 73, 112 S.Ct. 1780. The Foucha Court held that the statute violated due process because such an "acquittee may be held as long as he is both mentally ill and dangerous, but no longer." Id. at 77, 112 S.Ct. 1780. Thus, an application for release of an insanity acquittee has two components: (a) a present mental illness and (b) dangerousness stemming from that illness. Id.; see United States v. Bilyk, 29 F.3d 459, 462 & 462 n. 3 (8th Cir.1994) (per curiam) (recognizing that future dangerousness alone is not a proper basis for the continued confinement of an insanity acquittee) (citing Foucha, 504 U.S. at 77-79, 112 S.Ct. 1780); see also United States v. Wattleton, 296 F.3d 1184, 1202 n. 35 (11th Cir.2002) ("[T]he holding of Foucha provides that a defendant's dangerous propensities alone may not serve as a continued basis for confinement following an insanity verdict...."); Parrish v. Colorado, 78 F.3d 1473, 1477 (10th Cir.1996) ("[T]he real significance of the [ Foucha ] holding is that unless an acquittee has an identifiable mental condition, he cannot be held by the state merely because he is dangerous.").

> Both the Missouri Supreme Court and the Missouri Court of Appeals have recognized Foucha's effect. See Greeno v. State, 59 S.W.3d 500, 503 (Mo.2001) (en banc) ("A state may only confine someone found not guilty by reason of insanity if the confined person is both suffering from a mental disease or disorder and might be dangerous to himself or others if released.") (citing Foucha, 504 U.S. at 86, 112 S.Ct. 1780); State v. Nash, 972 S.W.2d 479, 482 (Mo. Ct. App.1998) ("The due process rights of a person are violated if the state holds a person in a psychiatric facility when the person is no longer suffering from a mental disease or defect.") (citing Foucha, 504 U.S. at 79-80, 112 S.Ct. 1780). In Nash, the court of appeals found that the trial court erred where, after determining that Nash, an insanity acquittee, proved that he did not presently suffer from a mental illness, it then required him to also prove that he would not be dangerous in the reasonable future. 972 S.W.2d at 482-83 (citing Foucha, 504 U.S. at 77-79, 112 S.Ct. 1780). The Nash Court went onto hold that "[o]nce the trial court found that [Nash] [did] not presently have a mental disease or defect, the trial court was bound to release [Nash]." Id. at 482.

> ...

However, in affirming the denial of Revels's application for unconditional release, the Missouri Court of Appeals stated:

> [I]t [is] not enough to prove present absence from mental defect, ... the person seeking unconditional release must show that he is not likely to suffer from a mental disease or defect in the reasonable future, and also establish by clear and convincing evidence ... that he will not be a danger to himself or others.

Revels, No. WD64433 at 3.

Thus, the Missouri Court of Appeals expressly based its affirmance of the circuit court's denial of unconditional release on its finding that, under Missouri law, an insanity acquittee seeking release must show, by clear and convincing evidence, that (1) he is not presently mentally ill; (2) he is not dangerous; (3) he is not likely to suffer a mental disease; and (4) he is not likely to become dangerous in the reasonable future. Requiring an insanity acquittee to prove both a lack of present mental illness and dangerousness, is clearly contrary to Foucha, and violates the substantive protections of the Due Process Clause as defined by the Supreme Court. See 504 U.S. at 77, 112 S.Ct. 1780. Here, the Missouri Court of Appeals went even further, requiring Revels to also show the absence of a probability of a future mental illness and future dangerousness, stepping even further over the line drawn by the Supreme Court in Foucha.

The court in Revels, 519 F.3d at 742-43, continued to explain that "once an insanity acquittee has shown the absence of a present mental illness, his continued confinement constitutes 'punishment,' which Foucha expressly rejected as a proper basis for the confinement of one who is not criminally responsible for his criminal actions."[7] Significantly, in Revels the Eight Circuit did not

---

[7]     The Eighth Circuit noted in Revels, 519 F.3d at 743, that the issue before it was not whether the petitioner suffered from a mental disorder and held "[w]ere this the opinion we were reviewing, we would assume the correctness of the finding and only reverse if Revels presented clear and convincing evidence that this was not the case." The issue which had been certified to the Eighth Circuit in Revels was "whether the Missouri Court of Appeals unreasonably applied Foucha in determining that the state could continue to hold Revels based on future dangerousness alone." Id.

The Eighth Circuit noted in Revels, 519 F.3d at 743 and 743 n.7, that Missouri Court of Appeals cases have reached results both consistent with and contrary to the Eighth Circuit's opinion in Revels. Among those cases cited which are contrary to the Eighth Circuit's opinion is State v. Weekly, 107 S.W.3d 340, 346-47 (Mo. Ct. App. 2003), in which case the Missouri court found that unconditional release was properly denied where the court found that it was likely in the reasonable future that the acquittee would have a mental disease rendering him dangerous to the safety of others.

find that Mo. Rev. Stat. § 552.040.7(6), Missouri's unconditional release statute, was unconstitutional.

Additionally, the Eighth Circuit has held that under federal law an insanity acquittee retains the burden of proving eligibility for release and that this burden does not violate the due process clause. See United States v. Wallace, 845 F.2d 1471, 1472-73 (8th Cir. 1998). In particular, the Eighth Circuit has noted that under federal law "[i]f the offense for which the defendant was tried involved bodily injury or serious property damage, or substantial risk thereof, the defendant must sustain his or her burden of proof by clear and convincing evidence. [] Otherwise the defendant must prove his or her eligibility for release by a preponderance of the evidence." Id. at 1472 (citing 18 U.S.C. § 4243(d)).[8] See also Revels, 519 F.3d at 742-43 (noting that Missouri law requires clear and convincing evidence regarding the requirements for release of an insanity acquittee).

---

In the matter under consideration the Missouri appellate court cited Weekly. Nonetheless, for the reasons discussed below, the court finds that the decision of the Missouri appellate court is not contrary to nor an unreasonable application of federal law. See Williams, 529 U.S. at 411 (holding that a writ of habeas corpus should not be granted merely because the State court erroneously applied federal law; the State court's decision must be unreasonable).

[8]      As stated by the court in Wallace, 845 F.2d at 1472:

Title 18 U.S.C. § 4243 sets out a new procedure to be followed when a defendant is found "not guilty only by a reason of insanity." Included therein is a provision under which such a defendant, if presently suffering from a mental disease or defect such that release would create a substantial risk of bodily harm to another person or serious damage to property of another, shall be committed for treatment to the custody of the attorney general. 18 U.S.C. § 4243(e). This new procedure calls for automatic commitment of the defendant pending a hearing, which must be held within forty days, on the defendant's present mental status and dangerousness. Id., §4243(b). A psychiatric or psychological report is required prior to the hearing. Id., §4243(b). At the hearing, the burden of proof is on the committed defendant to prove that his or her release would not create a substantial risk of injury to the person or property of others due to a present mental disease or defect. 18 U.S.C. § 4243(d).

Petitioner is an insanity acquittee who stabbed his wife to death. See Wallace, 845 at 1472 (holding that an insanity acquittee who was tried for a crime involving bodily injury has the burden of proving eligibility for release by clear and convincing evidence).  The Missouri appellate court found that Petitioner should be denied unconditional release.  Upon reaching this conclusion the Missouri appellate court considered the opinion of Dr. Kline that Petitioner *continued to have "psychiatric symptoms"* and that the "etiology of [Petitioner's] symptoms  is ultimately unknown." The court further considered Dr. Kline's opinion that, in regard to the *safety of others*, it was important for Petitioner to self-monitor or comply with court ordered monitoring and that Petitioner *had not demonstrated an ability to self-monitor.*  The Missouri appellate court also considered Dr. Gowdy's opinion that *"Petitioner was not participating in treatment hindering a full analysis of his current mental condition"* and that Petitioner "lacks insight into the nature of his illness."  The Missouri appellate court additionally considered the opinion of the experts, including Petitioner's own expert, Dr. Cuneo, that Petitioner required monitoring.  As the evidence considered by the Missouri appellate court reflected both that Petitioner had a current mental illness and that he was dangerous without monitoring, it cannot be said that its decision in regard to Petitioner's unconditional release is unreasonable. See Penry, 532 U.S. at 793.  The court finds that the decision of the Missouri appellate court regarding Petitioner's eligibility for unconditional release is consistent with and not contrary to federal law and that it is a reasonable application of federal law. See Williams, 529 U.S. at 412; Foucha, 504 U.S. at 77; Jones, 463 U.S. at 367-68; Revels, 519 F.3d at 741; Wallace, 845 F.2d at 1472-73.  Further, the decision of the Missouri appellate court in regard to the issue raised in Petitioner's § 2254 Petition resulted in a decision which was based on a reasonable determination of the facts in light of the evidence, including the reports and testimony of mental health experts. See

<u>Boyd</u>, 274 F.3d at 500; <u>King</u>, 266 F.3d at 822. As such, the court finds that the issue raised by Petitioner in his § 2254 Petition is without merit and that relief on its basis should be denied.

**V.**

**CONCLUSION**

For the reasons articulated above, the court finds that the issue raised by Petitioner in his §2254 Petition is without merit and that Petitioner should not be granted relief pursuant to § 2254. As such, Petitioner's § 2254 petition for habeas relief should be denied in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise to any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. <u>See</u> <u>Tiedeman v Benson</u>, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DENIED**; Doc. 1.

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability should be **DENIED**.

The parties are advised that Petitioner has eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. <u>See</u> <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990).

<table>
<tr><td></td><td>s/s Mary Ann L. Medler<br>MARY ANN L. MEDLER</td></tr>
<tr><td>Dated this <u>4th</u> day of August, 2008.</td><td>UNITED STATES MAGISTRATE JUDGE</td></tr>
</table>