UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| LLOYD GRASS, | ) |  |
|---|---|---|
| Petitioner, | ) |  |
| v. | ) | No. 4:07-CV-1726 CAS |
| ROBERT REITZ, | ) |  |
| Respondent. | ) |  |

## MEMORANDUM AND ORDER

This matter is before the Court following the Eighth Circuit's mandate that reversed and remanded the case to the district court.[1] Petitioner is committed and in the custody of the Missouri Department of Mental Health. Petitioner challenges, pursuant to 28 U.S.C. § 2254, the determination by the Missouri Court of Appeals that he is not entitled to an unconditional release. The district court did not rule on the merits of petitioner's habeas claim, but rather it found his claim had not been exhausted. The Eight Circuit reversed and remanded the district court's ruling. Following remand, petitioner moved for summary judgment, which respondent opposed. For the following reasons petitioner's motion for summary judgment is denied. Petitioner is not entitled to relief pursuant to 28 U.S.C. § 2254.

### I. Background

In 1992 petitioner killed his wife. He was immediately evaluated and found to be "markedly psychotic." The State of Missouri charged petitioner with first-degree murder. Following his arrest, petitioner underwent a mental evaluation and he was diagnosed with "Psychotic Disorder, Not

---

[1] The case was originally assigned to the Honorably Donald J. Stohr. Judge Stohr retired while the case was pending on appeal. Following remand, it was randomly assigned to the undersigned.

Otherwise Specified, In Partial Remission." Petitioner entered a plea of not guilty by reason of mental disease or defect. The plea was accepted, and petitioner was committed to the custody of the Missouri Department of Mental Health, pursuant to Mo. Rev. Stat. § 552.040.2.[2]

In 1996, petitioner escaped from St. Louis State Hospital. He was arrested and convicted for the escape. After serving 28 months of his 5-year escape sentence, with the Missouri Department of Corrections, petitioner was paroled back into the custody of the Department of Mental Health in 2001.

In 2004, petitioner filed applications for both conditional and unconditional release. Under section 552.040, a committed person can apply for either conditional or unconditional release. Conditional release is for a limited duration and is qualified by reasonable conditions. See Mo. Rev. Stat. § 552.040.10(3). To obtain conditional release, the committed person must prove, by clear and convincing evidence, that he or she "is not likely to be dangerous to others while on conditional release." § 552.040.12(6). "[A] conditional release implies that despite a mental disease or disorder, [the committed person is] eligible for limited freedom from a mental health facility, subject to certain conditions." Greeno v. State, 59 S.W.3d 500, 504 (Mo. 2001). Unconditional release can be granted only if the committed person shows "by clear and convincing evidence that [he or she] . . . does not have, and in the reasonable future is not likely to have, a mental disease or defect rendering [him or her] dangerous to the safety of himself [or herself,]or others." § 552.040.7. When an individual, like petitioner, has been committed pursuant to an acquittal of first-degree murder, neither conditional nor unconditional release may be granted unless the court also finds that the

---

[2]Section 552.040.2 provides that "[w]hen an accused is tried and acquitted on the ground of mental disease or defect excluding responsibility, the court shall order such person committed to the director of the Department of Mental Health for custody."

2

person "is not now and is not likely in the reasonable future to commit another violent crime" and "is aware of the nature of the violent crime committed ... and presently possesses the capacity to appreciate the criminality of the violent crime . . . and . . . to conform [his] conduct to the requirements of law in the future." See § 552.040.20. The denial of an application for either conditional or unconditional release is "without prejudice to the filing of another application after the expiration of one year." § 552.040.8 and 12.

In 2004, the state trial court consolidated petitioner's applications for conditional release and for unconditional release. After a hearing on the matter, it entered judgment denying petitioner's application for unconditional release but granting his application for conditional release. Both petitioner and the State appealed this decision to the Missouri Court of Appeals.

Petitioner argued on appeal "that the trial court erroneously applied [Mo. Rev. Stat. § 552.040] when it denied his [application] for unconditional release. . . . that the law requires his unconditional release because the trial court made findings in its judgment on his application for conditional release that petitioner proved by clear and convincing evidence that: 1) he does not currently suffer from a mental disease or defect; 2) he is not a danger to himself or others and is not likely in the foreseeable future to commit another violent crime because of mental illness; and 3) he is aware of the nature and wrongfulness of the crime underlying his commitment and currently has the capacity to conform his conduct to the requirements of the law." Grass v. State of Mo., 220 S.W.3d 335, 339 (Mo. Ct. App. 2007). In other words, petitioner argued that the trial court's finding on conditional release entitled him to unconditional release.

The State also filed an appeal. It argued in its appeal, among other things, that the trial court's findings in support of conditional release were not supported by the evidence in the record.

3

The Missouri Court of Appeals affirmed the trial court's denial of petitioner's application for unconditional release. The Missouri Court of Appeals noted there are different fact-finding requirements for unconditional as opposed to conditional release, and the trial court's findings on conditional release did not require petitioner's unconditional release:

> In its findings, conclusions, and judgment on the application for conditional release, the trial court found that petitioner "does not suffer from any mental disease or defect as set forth in Chapter 552 RSMo," "is not likely to be dangerous to others while on conditional release," "is not now and is not likely in the reasonable future to commit another violent crime against another person because of his mental illness," and "is aware of the nature of his violent crime committed against another person and presently possesses the capacity to appreciate the criminality of his violent crime against another person and his capacity to conform to the requirement of the law in the future." However, it did not make the finding required by sections 552.040.7(6) and 552.040.9 for unconditional release that petitioner was not likely in the reasonable future to have a mental disease or defect rendering him dangerous to the safety of himself or others. This is a different factual finding from those required for conditional release, and it is not encompassed by the findings made on conditional release. The "reasonable future" is a broader time frame than "while on conditional release," and "dangerous to the safety of himself or others" is a broader condition than "likely . . . to commit another violent crime" against another. Thus, the trial court's findings on conditional release do not mandate petitioner's unconditional release.

Id. at 339-40 (citations to trial court record omitted).

The Missouri Court of Appeals then reviewed whether the sufficiency of the evidence supported the trial court's decision to deny petitioner unconditional release. The appellate court reviewed the reports and testimony of three expert witnesses: Jeffrey Kline, Ph.D., a psychologist for the Department of Mental Health; Richard Gowdy, Ph.D., Director of Forensic Services for the Department of Mental Health; and Daniel J. Cuneo, Ph.D., a clinical psychologist and petitioner's expert. Id. at 341. All three experts recommended against unconditional release. Dr. Kline reported that "an important component to ensuring the safety of others, . . . is dependent upon [petitioner's] ability to either self monitor his psychiatric symptoms or comply with monitoring ordered by the

4

court." Id. at 341. Dr. Kline recommended against unconditional release because he found petitioner had not demonstrated an adequate ability to self-monitor. Dr. Gowdy reported: "Mr. Grass is not participating in treatment hindering a full analysis of his current mental condition . . . . He lacks insight into the nature of his illness and therefore does not have a viable relapse prevention plan. His lack of cooperation with inpatient treatment suggests that he would not submit to the community monitoring necessary to ensure that he does not become dangerous due to the reemergence of psychotic symptoms." Id. at 441. Dr. Cueno testified that "it was not likely in the reasonable future that petitioner would have a mental disease that would render him dangerous to others." Id. 342. But Dr. Cueno did not recommend unconditional release "because the residual effects of petitioner's lengthy incarceration would require an initial period of continuing oversight." Id. He further testified that "when petitioner was acutely psychotic, he had been abusing marijuana . . . , and although no cause had been definitively established, mental health professionals had opined that petitioner's drug abuse was one of the factors that triggered his psychotic behavior." Id. Dr. Cueno recommended conditional release with drug testing every thirty days." Id. at 342.

After reviewing the evidence, the Missouri Court of Appeals found that the trial court's decision to deny unconditional release was supported by substantial evidence because "[i]t is appropriate, under section 552.040, to deny unconditional release to a patient that has shown the inability to provide for his or her own mental health without supervision when there is likelihood that the patient will become psychotic and dangerous. Here, all of the experts agreed that monitoring of drug use or psychiatric symptoms was required to prevent a relapse." Id. at 342-43 (citations omitted).

As to the State's appeal, the Missouri Court of Appeals agreed that the trial court's finding that petitioner met the requirements of conditional release was not support by the sufficeny of the evidece. The Missouri Court of Appeals found that the trial court had misstated Dr. Kline's opinion, in that Dr. Kline did not give the opinion or testify that petitioner "is not now and is not likely in the foreseeable future to commit another violent crime against another person because of such person's mental illness." Id. at 343. The Missouri Court of Appeals found that the trial court's conclusion that petitioner met the criteria for conditional release was not supported by the record because it had misstated the testimony of Dr. Kline. The Missouri Court of Appeals noted that normally it would remand for limited additional findings, but that the trial judge was since deceased. Under these circumstances, the Missouri Court of Appeals reversed the judgment regarding conditional release and remanded for new trial.

While the remand of his application for conditional release was pending in state court, petitioner filed the present petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the denial of his application for unconditional release. Petitioner argues in his § 2254 petition that in light of the fact that the state trial court found that he did not suffer from a mental disease or defect, under the Constitution as interpreted by the Supreme Court, he is entitled to unconditional release.

The case was originally filed in the United States District Court Western District of Missouri. It was transferred to this district and assigned to a United States District Judge, who referred the case to a United States Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636. In her Report and Recommendation, the magistrate judge concluded that petitioner had exhausted his state court remedies as to his application for unconditional release, but she did not recommend

habeas relief. The magistrate judge found "the evidence considered by the Missouri appellate court reflected both that [p]etitioner had a current mental illness and that he was dangerous without monitoring." See Doc. 22 at 22. Petitioner timely objected to the Report and Recommendation.

The district court judge did not adopt the magistrate judge's Report and Recommendation. After de novo review, the district judge issued an order dismissing the petitioner's habeas petition on the grounds that he had failed to exhaust his state court remedies. The district court found that the state trial court's finding regarding petitioner's mental condition had been vacated by the Missouri Court of Appeals and remanded to the trial court for new trial. The district court wrote, "the instant petition depends on future state court findings regarding the present condition of petitioner's mental health. Therefore, there remains an undecided material factual issue and the petition seeking unconditional release is not exhausted." See Doc. 30 16-17. The district court did not stay the proceedings, but rather he dismissed the § 2254 petition.

Petitioner appealed the dismissal of his § 2254 petition to the Eight Circuit Court of Appeals. He argued that the district court erred in finding that his application for unconditional release was not exhausted. The Eighth Circuit reversed. It held that petitioner had exhausted his application for unconditional release in state court , and that he was not required to wait for the resolution of his remanded state court application for conditional release. "We conclude that because [petitioner] pursued his [ ] due-process challenge to the denial of unconditional release through 'one complete round of the State's established appellate review process,' [ ] he properly exhausted that claim [ ]. Accordingly, we reverse the district court's dismissal of petitioner's § 2254 petitioner and remand for further proceedings." Grass v. Reitz, 643 F.3d 579, 587 (8th Cir. 2011) (citing O'Sullivan v.

Boerckel, 526 U.S. 838, 845 (1999) and Kolocotronis v. Holcomb, 925 F.2d 278, 279 (8th Cir. 1991)).

Meanwhile, while petitioner's federal appeal was pending with the Eighth Circuit, the state trial court entered judgment denying his application for conditional release.[3] On remand, the trial court found petitioner had not met his burden and shown that he "not now and is not likely in the reasonable future to commit another violent crime;" or that he was "unlikely to be dangerous to others while on conditional release." See Doc. 58, Ex. A at 5 and 6. The trial court found credible the expert testimony of psychologist Dr. Gowdy, whose then current diagnosis of petitioner was "Axis 1 Psychotic Disorder (NOS)[4] Axis 2 Depressive Disorder (NOS) Axis 3 Personality Disorder (NOS)." Id. at 4. The trial court also noted that Dr. Gowdy's opinion was that "although [petitioner]'s original symptoms, could be in full remission, the duration of the earlier symptoms, [which are in the schizophrenia family], suggest they could re-emerge." Id. The trial court noted that "the depth of Dr. Gowdy's knowledge of [petitioner] and his circumstances makes him a particularly reliable witness." Id.

The trial court also noted that petitioner has refused to participate in his treatment since 2008; that he blames his 1996 escape on staff; that he claims that he will recognize delusional symptoms and seek psychiatric help, while at the same time he claims medical reports from staff are outright lies; that he has a "conflictional [sic] relationship" with all but one of his care providers;

---

[3]The state court judgment was brought to the attention of the Eighth Circuit Court of Appeals. The majority noted in its opinion that whether "the [trial] court's finding credible the psychologist's testimony and diagnosis constitutes an implicit finding that [petitioner] suffers from mental disease or defect is a question best left for the district court to decide in the first instance." Grass, 643 F.3d at 585.

[4]Not Otherwise Specified.

and he believes that there is a conspiracy against him. Id. at 4-5. The trial court noted that petitioner denies having a mental illness, but that he feels rage and depression. The trial court further noted that a Department of Mental Health psychologist had written in his notes that petitioner disputed the evidence that he had killed his wife, but later in the same session, petitioner concluded that the had caused her death. The trial court found that petitioner "lacks insight into the nature of his illness." Id. at 5. The court found petitioner does not have the capacity to conform his conduct to the requirements of the law because he would not be able to recognize any future delusions and seek appropriate treatment. The trial court concluded that petitioner had not met his burden of establishing that he "is not now and is not likely in the reasonable future to commit another violet crime against another person." Id. at 5. Petitioner did not appeal the judgment denying his application for conditional relief, and the time to do so has expired.

## *II. Standard*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides federal courts with specific standards for review of state court adjudications on habeas corpus review. 28 U.S.C. § 2254(d)(1), (2). The Supreme Court determined the proper interpretation of 28 U.S.C. § 2254(d)(1), and established a framework for review of state court legal conclusions. See Williams v. Taylor, 529 U.S. 362, 405, 411, 413 (2000). The Court held that § 2254(d)(1) delineates two independent categories of cases in which a state prisoner may obtain federal relief with respect to a claim adjudicated on the merits in state court. See id. at 404. The statute provides that a federal habeas court may grant a writ of habeas corpus if the state court decision is either "(1) contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2)

9

"involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1) (emphasis added).

The Supreme Court stated that a state court's decision may be "contrary to" clearly established Supreme Court precedent in either of two respects: (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams, 529 U.S. at 406, 412. According to the Eighth Circuit, "the state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A state court's decision may be "an unreasonable application" of clearly established Supreme Court precedent in either of two respects: (1) if the state court identifies the correct governing legal rule from the Court's cases "but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 529 U.S. at 406. The Supreme Court stated that the "unreasonable application" inquiry is an objective one, id. at 409-10, and instructed that "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410 (emphasis in original). Thus, "a federal habeas court may not grant relief simply because it

10

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id.; see also Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

If the state court correctly identifies the governing legal rules, only the unreasonable application clause is relevant. Marcrum v. Luebbers, 509 F.3d 489, 54 (8th Cir. 2007). "A state determination may be set aside under this standard if, under clearly established federal law, the state court was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled." Ramdass v. Angelone, 530 U.S. 156, 166 (2000). "The factual findings of the state court also may be challenged in a § 2254 petition, but they are subject to an even more deferential review." Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001). Factual findings by the state court "shall be presumed to be correct, a presumption that will be rebutted only by "clear and convincing evidence." 28 U.S. C. § 2254(e)(1).

### III. Discussion

Petitioner raises one ground in his § 2254 petition. Petitioner claims that it is a violation of his constitutional due process rights to continue his confinement as a mental patient when the state trial court found that he was not mentally ill or dangerous. Petitioner is not challenging his initial commitment, but rather he is challenging the denial of his application for unconditional release, made pursuant to Mo. Rev. Stat. § 552.040.

"[C]ommitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Jones v. United States, 463 U.S. 354, 361 (1983) (quoting Addington v. Texas, 441 U.S. 418, 425 (1979)). The Supreme Court outlined the substantive protections of the Due Process Clause for the continued confinement of insanity acquittees in Foucha v. Louisiana, 504

U.S. 71 (1992). The petitioner in Foucha challenged Louisiana's statutory scheme. Under Louisiana law at the time, if a hospital review committee recommended that an acquittee be released, a trial court was to hold a hearing to determine whether the acquittee was dangerous to himself or herself or to others. If the acquittee was found to be dangerous, he or she was to be returned to the hospital whether or not the acquittee was at the time mentally ill. Id. at 73. The Supreme Court held that the statute violated due process because such an "acquittee may be held as long as he is both mentally ill and dangerous, but no longer." Id. at 77. See also United States v. Bilyk, 29 F.3d 459, 462 & 462 n. 3 (8th Cir.1994) (per curiam) (recognizing that future dangerousness alone is not a proper basis for the continued confinement of an insanity acquittee) (citing Foucha, 504 U.S. at 77-79).

The Eighth Circuit has reviewed Missouri's statutes concerning the involuntary commitment of insanity acquittees in light of Foucha. In Revels v. Sanders, 519 F.3d 738 (8th Cir. 2008), an insanity acquittee, like petitioner, challenged the denial of his application for unconditional release made pursuant to Mo. Rev. Stat. § 552.040. In Revels, the Missouri Court of Appeals had affirmed the trial court's denial of the petitioner's application for unconditional because "it [is] not enough to prove present absence from mental defect, but the person seeking unconditional release must show that he is not likely to suffer from a mental disease or defect in the reasonable future, and also establish by clear and convincing evidence the mandate of Section 552.040 that he will not be a danger to himself or others." Id. at 738. The Eight Circuit found that the standard for unconditional release as articulated by the Missouri Court of Appeals was contrary to the Supreme Court's holding in Foucha.

> Requiring an insanity acquittee to prove both a lack of present mental illness and dangerousness, is clearly contrary to Foucha, and violates the substantive protections of the Due Process Clause as defined by the Supreme Court. See 504 U.S. at 77, 112 S.Ct. 1780. Here, the Missouri Court of Appeals went even further, requiring Revels

12

to also show the absence of a probability of a future mental illness and future dangerousness, stepping even further over the line drawn by the Supreme Court in Foucha.

Id. at 742. Finding the Missouri Court of Appeals had violated the petitioner's due process rights by applying a standard that was contrary to Supreme Court precedent, the Eighth Circuit ordered that the petitioner "be released from state custody unless the State of Missouri affords Revels a new hearing within a reasonable time as set by the district court."[5] Id. at 744.

In the case at bar, the Missouri Court of Appeals held petitioner to the same standard that was deemed contrary to Supreme Court law by the Eighth Circuit in Revels: "[N]o committed person shall be unconditionally released unless it is determined through the procedures in this section that the person does not have, and in the reasonable future is not likely to have, a mental disease or defect rendering the person dangerous to the safety of himself or others." Grass v. State of Mo., 220 S.W.3d 335, 339 (Mo. Ct. App. 2007) (emphasis added). The Missouri Court of Appeals noted that the trial court, in granting conditional release, had not made a determination as to whether "petitioner was not likely in the reasonable future to have a mental disease or defect rendering him dangerous to the safety of himself or others." Id. at 340 (emphasis in original). As the Eighth Circuit has expressly held, requiring an insanity acquittee to establish that he or she is not likely in the reasonable future to have a mental disease or defect that makes him or her dangerous violates the substantive protections of the Due Process Clause as defined by the Supreme Court in Foucha. Revels 519 F.3d at 742.

---

[5]As Judge Colloton noted in his concurrence, Missouri courts in interpreting Foucha have reached results contrary to the Eighth Circuit's opinion in Revels. Grass v. Reitz, 643 F.3d 579, 586-87 (8th Cir. 2008). See e.g., State v. Weekly, 107 S.W.3d 340, 346-47 (Mo. Ct. App. 2003) (unconditional release was properly denied where the court found that it was likely in the reasonable future that the acquittee would have a mental disease rendering him dangerous to the safety of others) (emphasis added).

The present case, however, does not warrant the granting of habeas relief. Unlike Revels, there is evidence that the state court on remand found petitioner was at the time suffering from mental illness, and that he was dangerous. The Missouri Court of Appeals vacated the trial court's factual findings on conditional release, including the trial court's finding that petitioner was not currently suffering from a mental disease or defect. On remand, the trial court revisited the issue of petitioner's present mental condition and implicitly found petitioner was suffering from mental illness. The trial court found credible the testimony of Dr. Richard Gowdy, including his diagnosis that petitioner was suffering from mental illness. The trial court noted that Dr. Gowdy had diagnosed petitioner with Psychotic Disorder (NOS), Depressive Disorder (NOS) and Personality Disorder (NOS). See Doc. 58, Ex. A at 4.

Petitioner argues that the trial court did not find that at the time he was suffering from mental illness because the trial court noted that Dr. Gowdy testified that petitioner's "original symptoms could be in full remission, [but] the duration of the earlier symptoms suggests they could re-emerge." Id. Petitioner argues that this "equivocal language" merely suggests the possibility that his illness may reemerge. Petitioner is confusing symptoms with illness. The fact that petitioner was not showing his original symptoms does not preclude a finding of mental illness as petitioner would suggest. Grass, 643 F.3d at 587 n.4. (Colloton, J., concurring) (citing United States v. Weed, 389 F.3d 1060, 1073 & n. 7 (10th Cir. 2004) (upholding finding that insanity acquittee had a present mental defect even though he showed no symptoms); United States v. Murdoch, 98 F.3d 472, 476 (9th Cir. 1996); State v. Huss, 666 N.W.2d 152, 160 (Ia. 2003)).

Petitioner also argues that Dr. Daniels testified that he "no longer has a present mental disease or defect and he is not dangerous to either himself or others," a fact that the trial court noted. See

14

Doc. 58, Ex. A at 2. The trial court, however, did not state that it was crediting Dr. Daniels's opinion. Rather, the trial court explicitly stated that it was crediting the testimony of Dr. Gowdy, whose testimony contradicted Dr. Daniels's. State court factual findings are presumed to be correct. Tokar v. Bowersox, 198 F.3d 1039, 1047 (8th Cir. 1999), and petitioner has not presented clear and convincing evidence to rebut this presumption. Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir.2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir.2003)). Therefore, the Court finds there is evidence in the state court record to support the conclusion that petitioner was at the time suffering from mental illness.[6]

There is also evidence in the record that as a result of his mental illness petitioner is dangerous to others. On remand, the trial court found that in light of the fact that petitioner does not participate in treatment, that he lacks self-awareness of his illness, and that he is conflict-prone and verbally abusive to his care-givers, petitioner had not met his burden of establishing that he "is not now and is not likely in the reasonable future to commit another violent crime against another person." Id. at 5 (emphasis added). Unlike the Missouri Court of Appeals and the previous trial court, this trial court did not restrict its finding to future dangerousness, but rather it evaluated whether petitioner was presently dangerous.

Petitioner argues there is insufficient evidence that he is currently dangerous, and he points to the fact that the trial court used vague language such as the evidence "suggests" he lacks the

---

[6]Although the Missouri Court of Appeals applied the incorrect standard, there is also evidence in the state appellate court's opinion that at the time of his state court appeal petitioner was suffering from mental disease or defect. For example, the Missouri Court of Appeals considered the opinion of Dr. Kline, and it noted that this expert found that petitioner continued to have "psychiatric symptoms " and that the "etiology of [petitioner's] symptoms is ultimately unknown." Grass, 220 S.W. 3d at 341-42. The Missouri Court of Appeals also considered the opinion of Dr. Gowdy, who found that "[p]etitioner was not participating in treatment hindering a full analysis of his current mental condition " and that petitioner "lacks insight into the nature of his illness." Id. at 341.

15

capacity to conform his conduct to the requirements of the law. Petitioner argues these imprecise and equivocal statements by the trial court do not constitute a finding of fact that he is dangerous such that he can be held involuntarily.

In his petition and memoranda in support, petitioner does not dispute that he bore the burden of proof of demonstrating that he was not dangerous – a standard that has not been determined to be contrary to clearly established Federal law, as determined by the Supreme Court.[7] 28 U.S.C. § 2254(d)(1). See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect"). The trial court explicitly found petitioner had not met his burden of proof with regard to dangerousness. And this Court finds that the trial court's conclusion was based on a reasonable determination of the facts in light of the evidence, including the reports and testimony of mental health experts. See Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001); King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001).

But no matter who carried the burden of proof, the Court finds there is clear and convincing evidence in the state court record that petitioner was dangerous. An expert, who the trial court personally observed and credited, found petitioner suffered from mental illness with psychosis, and although his symptoms had been in remission, petitioner lacked self-awareness and was unable to recognize his symptoms. In addition, more than one expert testified that petitioner is belligerent,

---

[7]The Eighth Circuit has held that under federal law an insanity acquittee retains the burden of proving eligibility for release and that this burden does not violate the due process clause. See United States v. Wallace, 845 F.2d 1471, 1472-73 (8th Cir. 1988). In particular, the Eighth Circuit has noted that under federal law "[i]f the offense for which the defendant was tried involved bodily injury or serious property damage, or substantial risk thereof, the defendant must sustain his or her burden of proof by clear and convincing evidence. [ ] Otherwise the defendant must prove his or her eligibility for release by a preponderance of the evidence." Id. at 1472 (citing 18 U.S.C. § 4243(d)).

uncooperative, and most importantly, unable <u>and</u> unwilling to seek the appropriate mental health treatment he needs. Based on the record before it, the Court finds there is evidence in the record demonstrating both that petitioner had a current mental illness and that he is dangerous without monitoring. As such, the Court finds that petitioner's due process claim – the only claim he raises in his habeas petition – is without merit.

### *IV. Conclusion*

For the reasons stated above, the Court finds that the due process claim petitioner raises in his § 2254 petition is without merit. Petitioner is not entitled to relief pursuant to § 2254, and his petition for habeas relief should be denied. The Court does believe, however, that reasonable jurists might find the Court's assessment of the instant petition for relief debatable or wrong for purposes of issuing a certificate of appealability under 28 U.S.C. § 2254(d)(2). <u>See</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 337 (2003) (stating the standard for issuing a certificate of appealability) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484,(2000)). Therefore, the Court will grant a certificate of appealability with regard to the merits of petitioner's due process claim.

Accordingly,

**IT IS HEREBY ORDERED** that Lloyd Grass's Petition for Writ of Habeas Corpus pursuant to Title 28 U.S.C. § 2254 is **DENIED**. [Doc. 1]

**IT IS FURTHER ORDERED** that a certificate of appealability shall be issued with respect to the merits of petitioner's due process claim.

**IT IS FURTHER ORDERED** that all remaining motions are denied as moot.

An appropriate Judgment shall accompany this Memorandum and Order.

                                        _____
                                        **CHARLES A. SHAW**
                                        **UNITED STATES DISTRICT JUDGE**


Dated this   5th   day of February, 2013.